# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

ANTONIO TONY MCKIBBINS,

    Plaintiff,

vs.

BRIAN WILLIAMS, et al.,

    Defendants.

Case No. 2:09-CV-00437-RLH-(GWF)

**ORDER**

    Before the court are the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (#1) and respondents' answer (#13). The court finds that relief is not warranted, and the court denies the petition.

    Around 1:00 a.m. on February 1, 2005, Yahira Garcia drove in a new Chrysler 300M, licensed in the State of Washington and belonging to her fiancé's father, to pick up a friend from work. When she exited the car, a person she identified as petitioner put a knife to her throat, took her purse, her keys, and the car. He drove away in a direction that Garcia thought was a dead end. Garcia ran into her friend's workplace and called police, but nobody saw petitioner drive out the other direction.

    On February 3, 2005, Garcia and her family returned to the scene, because they wanted to know how petitioner got away. Driving north on Highland Drive, they learned that the public street ended in a parking lot that, after a turn, itself exited onto Spring Mountain Road, another public street. At that same time, they saw on Spring Mountain Road a Chrysler 300M driving westbound. Garcia recognized petitioner as the driver and, as the car passed, her fiancé saw the Washington

State license plates that marked the car as his father's. They followed petitioner and called the police.

Police officers on the ground in the area, and in a helicopter, quickly found petitioner in the Chrysler. Officer Betts chased petitioner into an apartment complex. Petitioner missed the exit to the complex, stopped the Chrysler, and fled on foot. Betts followed. Petitioner climbed over a fence and jumped down into another apartment complex. Betts did the same, but he injured a foot in landing, and he lost sight of petitioner. The officers in the helicopter guided Betts to petitioner, and Betts arrested petitioner. Betts brought petitioner to another police car and drove him back to where petitioner had left the Chrysler.

Garcia and her family had arrived where petitioner had left the Chrysler, and they waited for Betts to return. When Betts returned, they immediately identified petitioner even before Betts took petitioner out of the police car. Apart from identification and driving the car that was stolen from Garcia, other items of evidence connected petitioner to the crime. First, inside the Chrysler were the clothes that Garcia said that petitioner was wearing when he robbed her. Officers also found a knife in the Chrysler, but Garcia said that the knife used in the robbery was different. Second, at the time of the robbery some clothing belonging to Garcia's fiancé was in the Chrysler. Petitioner was wearing that clothing at the time of the chase and arrest. Third, at the time of the robbery new shoes for Garcia's daughter, with the receipt of purchase, were in the Chrysler. Petitioner was wearing new shoes in the same style, but in his size.

Petitioner was charged with robbery with the use of a deadly weapon and failure to stop on the signal of a police officer. Ex. A (#6).[1] Initially, Frank Kocka represented petitioner. On June 9, 2005, the trial judge removed Kocka as petitioner's lawyer, based upon confidential information that Kocka presented to the judge in camera. Ex. D, p. 2 (#6). The judge appointed Laura Ungaro to represent petitioner. Id. At trial, the prosecution presented the evidence that the court has outlined above. Petitioner's defense was an alibi. His wife, Jennifer McKibbins, testified that petitioner was at home with her at the time of the robbery. Ex. I, pp. 6-10 (#6). She testified that petitioner owned

---

[1] All exhibits are attached to respondents' motion to dismiss (#6).

1   the shirt and the shoes that he was wearing at the time he was arrested. Id., pp. 14-15. She testified
2   that she had told Kocka about this alibi. Id., pp. 24-26. The prosecution called Kocka as a rebuttal
3   witness. He testified that Jennifer had never told him about the alibi. Id., p. 33.

4         The jury found petitioner guilty on both counts. Ex. K (#6). For the charge of failing to
5   stop, the trial judge sentenced petitioner to a minimum of two years and a maximum of six years in
6   prison. For the charge of robbery with the use of a deadly weapon, the trial judge found petitioner to
7   be a habitual criminal and sentenced petitioner to life imprisonment with parole eligibility starting
8   after ten years; this sentence runs consecutively to the sentence for failing to stop. Ex. M (#6).

9         Petitioner appealed from the judgment of conviction. He raised eight issues. See Ex. O
10  (#6).[2] The Nevada Supreme Court addressed only the issue of whether the trial court should have
11  allowed Kocka to testify as a rebuttal witness, and determined that the trial court did not abuse its
12  discretion. Ex. S, pp. 2-3 (#6). The Nevada Supreme Court held summarily that petitioner's other
13  contentions were without merit. Id.

14        Petitioner then filed in the state district court both a post-conviction habeas corpus petition, a
15  memorandum supporting the petition, and a motion to correct an illegal sentence. Ex. T, U, X (#6).
16  That court denied the petition and the motion in separate orders. Ex. W, AA (#6). Petitioner
17  appealed both denials. The Nevada Supreme Court consolidated the appeals and affirmed the
18  denials. Ex. GG (#6).

19        Petitioner then commenced this action. The court dismissed grounds 9(2), 12, and 13
20  because they were plainly without merit. Order (#3). Respondents first filed a motion to dismiss
21  (#6). The court granted it in part, dismissing Grounds 10 and 11 as procedurally defaulted. The
22  court also noted that, based upon the exhibits presented in support of the motion to dismiss, ground
23  14 was plainly without merit. Order (#12). Reasonable jurists would not find the court's
24  conclusions to be debatable or wrong, and the court will not issue a certificate of appealability on
25  these grounds.

26

27  ――――――――――――――
28      [2]The first eight grounds of the petition (#1) are photocopied from the direct-appeal opening brief.

Congress has limited the circumstances in which a federal court can grant relief to a petitioner who is in custody pursuant to a judgment of conviction of a state court.

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "By its terms § 2254(d) bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions in §§ 2254(d)(1) and (d)(2)." Harrington v. Richter, 131 S. Ct. 770, 784 (2011).

> Federal habeas relief may not be granted for claims subject to § 2254(d) unless it is shown that the earlier state court's decision "was contrary to" federal law then clearly established in the holdings of this Court, § 2254(d)(1); Williams v. Taylor, 529 U.S. 362, 412 (2000); or that it "involved an unreasonable application of" such law, § 2254(d)(1); or that it "was based on an unreasonable determination of the facts" in light of the record before the state court, § 2254(d)(2).

Harrington, 131 S. Ct. at 785. "For purposes of § 2254(d)(1), 'an unreasonable application of federal law is different from an incorrect application of federal law.'" Id. (citation omitted). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Id. (citation omitted). "[D]etermining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning." Id. at 784. "Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." Id.

> [E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.

Yarborough v. Alvarado, 541 U.S. 652, 664 (2004).

> Under § 2254(d), a habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; and then it must ask whether it is

> possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court.

Harrington, 131 S. Ct. at 786.

> As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

Id., at 786-87.

In ground 1, petitioner claims that his rights guaranteed by the Confrontation Clause of the Sixth Amendment were violated. As described above, Officer Betts lost sight of petitioner when Betts jumped down from a fence and injured his foot. Betts testified that officers in a helicopter still had sight of petitioner, and he testified how they guided him to petitioner. Ex. H, pp. 213-31 (#6). The Sixth Amendment requires that when the state seeks to introduce testimonial statements given out of court, the declarant must be unavailable to testify and a prior opportunity for cross-examination must have existed. Crawford v. Washington, 541 U.S. 36 (2004). Crawford left open the definition of "testimonial," but prior testimony at a preliminary hearing, prior testimony before a grand jury, and statements given to police at interrogations are testimonial. 541 U.S. at 68. Later, the Supreme Court clarified what it meant by testimonial statements given to police:

> Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.

Davis v. Washington, 547 U.S. 813, 822 (2006). On direct appeal, the Nevada Supreme Court ruled summarily that this claim lacked merit. However, it reasonably could have concluded that statements from officers in a helicopter, used to guide Officer Betts on the ground, were not testimonial given that Officer Betts was pursuing petitioner and intended to meet an ongoing emergency. See Harrington, 131 S. Ct. at 784; 28 U.S.C. § 2254(d)(1). Ground 1 is without merit. Reasonable jurists would not find this conclusion to be debatable or wrong, and the court will not issue a certificate of appealability for this ground.

1	In ground 2, petitioner claims that the trial court erred in failing to inquire whether petitioner had a conflict of interest with his second attorney, Laura Ungaro. The Sixth Amendment does not guarantee petitioner a conflict-free relationship with his counsel, but it does protect him if "the conflict between [him] and his attorney prevented effective assistance of counsel." Schell v. Witek, 218 F.3d 1017, 1026 (9th Cir. 2000) (en banc) (citing Morris v. Slappy, 461 U.S. 1, 13-14 (1983) ("Accordingly, we reject the claim that the Sixth Amendment guarantees a 'meaningful relationship' between an accused and his counsel.")). On direct appeal, the Nevada Supreme Court ruled summarily that this claim lacked merit. Petitioner did not allege on direct appeal what conflicts he had with his attorney, nor did he allege how those conflicts prevented counsel from assisting him. Even in this action, petitioner did not raise any claims that trial counsel provided ineffective assistance.[3] Without that information, the Nevada Supreme Court reasonably could have concluded that there was no conflict that required the district court to remove Ungaro from representing petitioner. See Harrington, 131 S. Ct. at 784; 28 U.S.C. § 2254(d)(1). Ground 2 is without merit. Reasonable jurists would not find this conclusion to be debatable or wrong, and the court will not issue a certificate of appealability for this ground.

Ground 3 concerns petitioner's former counsel, Frank Kocka, and it has two parts. First, as noted above, Kocka had presented confidential information to the judge in camera, and the judge removed Kocka from his representation of petitioner. Petitioner claims that the confidential information affected his sentences, because at sentencing the judge accused petitioner of having his "estranged wife come in [to court] and obviously commit perjury." On direct appeal, the Nevada Supreme Court ruled summarily that this claim lacked merit. The nature of this confidential information has never been disclosed. Regardless of the confidential information, evidence presented at trial could have led the judge to make that accusation. Petitioner was found driving the stolen Chrysler. He was wearing clothes that were in the car at the time it was stolen. The clothes that the robber wore at the time of the robbery were found in the car. This evidence by itself

---

[3]Petitioner has raised claims of ineffective assistance of appellate counsel, in grounds 9 and 12, but appellate counsel was a different person.

showed that Jennifer McKibbins' alibi testimony was untrue. The Nevada Supreme Court reasonably could have concluded that the trial judge was referring to the evidence presented at trial when he accused petitioner of having his wife commit perjury. See Harrington, 131 S. Ct. at 784; 28 U.S.C. § 2254(d)(1).

The second part of ground three concerns Kocka's rebuttal testimony. On cross-examination, the prosecutor asked Jennifer McKibbins whom she had told about petitioner's alibi. She testified that she did not tell the police or the prosecutors. She testified that she told Kocka about the alibi while Kocka was still representing petitioner, but that Kocka disregarded the information. Ex. I, pp. 24-26 (#6). The prosecution then called Kocka as a rebuttal witness, over petitioner's objection. Kocka testified that Jennifer McKibbins did not tell him about petitioner's alibi. Id., p. 33. Petitioner raised this issue on direct appeal, and it is the only issue that the Nevada Supreme Court decided in detail. Although petitioner presented the issue as a violation of his Sixth Amendment right to a fair trial, the Nevada Supreme Court determined that the issue lacked merit as a matter of state law:

> We conclude that the district court did not abuse its discretion in allowing Kocka to testify that Jennifer had never informed him about having an alibi. Pursuant to NRS 49.095, we conclude that Jennifer's communications (purported alibi) with Kocka do not fall under the scope of the attorney-client privilege retained by the appellant.
>
> Arguably, even if these purported communications fell under the scope of the attorney-client privilege, we conclude that Jennifer waived any privilege when she testified at trial about her communications with Kocka.
>
> Consequently, because Jennifer's purported communications with Kocka about the existence of an alibi do not fall under the scope of the attorney-client privilege, we conclude that the district court did not abuse its discretion in allowing Kocka to testify in rebuttal that Jennifer had never informed him about having an alibi for the appellant.

Ex. S, pp. 2-3 (#6). On direct appeal, and in the current petition (#1), petitioner bases his argument upon several court opinions. Hickman v. Taylor, 329 U.S. 495 (1947), is the only decision of the Supreme Court of the United States that petitioner cites. The Court determined that the discovery provisions of the Federal Rules of Civil Procedure do not require an attorney to disclose his notes of interviews with witnesses. The Court never referred to the Constitution, and the Federal Rules of Civil Procedure are inapplicable in a state criminal proceeding. Grady v. United States, 715 F.2d 402 (8th Cir. 1983), and In re Terkeltoub, 256 F. Supp. 683 (S.D.N.Y. 1966), both involved

-7-

criminal cases in which the prosecutions tried to call defense attorneys to testify, with different results.  Grady, and Terkeltoub do not cite decisions of the Supreme Court of the United States in support of their decisions.  The difference in the decisions indicates that the law, such as it exists, is not clearly established.  This court has been unable to find any decision of the Supreme Court of the United States that clearly establishes a constitutional restriction upon the testimony of an attorney against a former client.  Consequently, the decision of the Nevada Supreme Court cannot be contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States.  Carey v. Musladin, 549 U.S. 70, 77 (2006); 28 U.S.C. § 2254(d)(1).  Ground 3 is without merit.

Reasonable jurists might find the court's conclusions on ground 3 to be debatable, and the court will issue a certificate of appealability for ground 3.

In ground 4, petitioner claims that his Sixth Amendment right to a fair trial was violated because of an impermissibly suggestive show-up identification by Garcia, especially after the description of the robber that she gave to police did not match petitioner.  "[R]eliability is the linchpin in determining the admissibility of identification testimony."  Manson v. Brathwaite, 432 U.S. 98, 114 (1977).  The factors "include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation."  Id. (citing Neil v. Biggers, 409 U.S. 188, 199-200 (1972), and Stovall v. Denno, 388 U.S. 293 (1967)).  On direct appeal, the Nevada Supreme Court summarily denied this ground on the merits.  Even with the initial description that Garcia gave to police, the evidence showed that her identification was reliable.  When Garcia saw the Chrysler heading west on Spring Mountain Road, she immediately recognized that the driver, petitioner, was also the robber.  Furthermore, petitioner was wearing clothing that belonged to Garcia's fiancé and was left in the Chrysler.  Finally, the clothing worn by the robber was inside the Chrysler.  Under these circumstances, the Nevada Supreme Court could reasonably conclude that the identification was not suggestive.  See Harrington, 131 S. Ct. at 784; 28 U.S.C. § 2254(d)(1).  Ground 4 is without merit.

Reasonable jurists would not find this conclusion to be debatable or wrong, and the court will not issue a certificate of appealability for this ground.

Ground 5 is a claim that petitioner's rights to due process and a fair trial were violated because Officer Betts was allowed to testify that he thought petitioner was guilty. On direct appeal, the Nevada Supreme Court summarily denied this ground on the merits. Betts testified that he had arrested petitioner, walked petitioner to another police car, and then drove back to the Chrysler, where Garcia's family was waiting. Betts then testified:

> Q  Okay. When you get back to where the Chrysler is, did you see the victim's car and the victim's family there?
>
> A  Yes, they were there.
>
> Q  Did you present the defendant to the victim for identification in the carjacking?
>
> A  Actually, as we pulled in, they're like: That's him.
>
> Q  Okay.
>
> A  <u>They basically have enough on him before I could even get him out of the car, but we had him get out, like we always do, for a positive one-on-one.</u>
>
> Q  So even before he gets out of the car, you are hearing the victims say that's him?
>
> A  Yes.
>
> Q  And then you also stand him up in front of the victim for a positive identification?
>
> A  Yes.

Ex. H, p. 226 (emphasis added) (#6). The emphasized portion of Betts' testimony is what petitioner calls an opinion on petitioner's guilt. Petitioner takes Betts' testimony out of context. Betts was not testifying, as petitioner argues, that the police had enough evidence of petitioner's guilt that the one-on-one identification was unnecessary. Betts actually was testifying that Garcia and her family had identified petitioner even before he could remove petitioner from the police car for the formal one-on-one identification. In the testimony at issue, "They" are not the police, but the victim and her family. The Nevada Supreme Court could reasonably conclude that this issue had no factual support. See Harrington, 131 S. Ct. at 784; 28 U.S.C. § 2254(d)(1). Ground 5 is without merit. Reasonable jurists would not find this conclusion to be debatable or wrong, and the court will not issue a certificate of appealability for this ground.

In ground 6, petitioner claims that twice the prosecutor's comments amounted to misconduct. "The relevant question is whether the prosecutors' comments so infected the trial with unfairness as to make the resulting conviction a denial of due process." Darden v. Wainwright, 477 U.S. 168, 181 (1986) (internal quotation omitted). See also Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974). First, in the opening statement, petitioner argues that the prosecutor called him stupid. The prosecutor said:

> And that's what the evidence will show. It's pretty simple that the defendant committed an armed carjacking and then was simply stupid enough to be driving around in the same exact area two days later when, fortuitously, the victims happened to be there as well. He was seen; he was identified as the carjacker.

Ex. H, p. 100 (#6). On direct appeal, the Nevada Supreme Court summarily denied this ground on the merits. Given the evidence presented against petitioner, which the court has outlined several times above, the Nevada Supreme Court reasonably could have concluded that characterizing petitioner's actions as stupid did not make the trial unfair.

Second, petitioner argues that the prosecutor's comments in the closing argument regarding the shoes that petitioner was wearing was not supported by the evidence. The prosecutor stated:

> He goes into the car, he sees the tennis shoes; he takes them, because they were for her daughter. They wouldn't fit him, but he goes in and gets himself—returns and gets himself some new tennies. He gets rid of everything else of value in the car.

Ex. I, p. 58 (#6). On direct appeal, the Nevada Supreme Court summarily denied this ground on the merits. Again, with the evidence against petitioner the Nevada Supreme Court reasonably could have concluded that this comment did not make the trial unfair. Furthermore, the Nevada Supreme Court reasonably could have concluded that the prosecutor's comment was a fair inference based upon the evidence. Petitioner had shown that he was willing to take others' apparel for his own, because he was caught wearing the clothes of Garcia's fiancé. The shoes for Garcia's daughter and the receipt were in the Chrysler, but neither was found when the Chrysler was recovered. Based on that evidence, a prosecutor could argue the inference that petitioner had exchanged the shoes in the Chrysler for shoes that could fit him. Ground 6 is without merit. Reasonable jurists would not find this conclusion to be debatable or wrong, and the court will not issue a certificate of appealability for this ground.

In ground 7, petitioner argues that twice the trial judge was partial. Petitioner has a fundamental right to an impartial judge. Gray v. Mississippi, 481 U.S. 648, 668 (1987). The Nevada Supreme Court dismissed this issue summarily on the merits. First, petitioner notes that when in closing argument his counsel stated his height, weight, and age, the judge told the jury to disregard the statement because there was no evidence of petitioner's age. There was testimony about petitioner's height and weight, which a witness read from the booking statement. See Ex. H, p. 255-57 (#6). The booking statement apparently also gave petitioner's age, but the booking statement was not admitted into evidence. In contrast, petitioner argues that the judge did not stop the prosecutor from arguing what petitioner did with the shoes in the Chrysler, as described in ground 6. The distinction is in the evidence. In the case of the prosecutor's argument, there was testimony that shoes were in the Chrysler at the time of the robbery, there was testimony that the shoes were not found in the Chrysler at the time of petitioner's arrest, and there was testimony that petitioner was wearing new shoes of a similar style. In the case of defense counsel's argument, there was no evidence of petitioner's age. Counsel could have continued her argument in relation to petitioner's height and weight, but she did not. Based upon this evidence, the Nevada Supreme Court reasonably could have concluded that the trial judge was impartial.

Second, petitioner complains about that the judge made comments about petitioner that were not supported by the evidence at trial. The judge said that it was impossible for petitioner to be innocent based upon the facts of the case, that petitioner was a sociopath and a threat to the community, and that petitioner had suborned perjury. Ex. L, pp. 3-5 (#6). This court has already determined that petitioner's claim with regard to the accusation of perjury was without merit. The judge's comment about how it was impossible for petitioner to be innocent was based upon the evidence presented at trial. Finally, the judge's comments that petitioner was a sociopath and a threat to the community was based upon the judge's perception at trial and petitioner's criminal history. The Nevada Supreme Court reasonably could have concluded that none of these comments amounted to misconduct. Ground 7 is without merit. Reasonable jurists would not find this conclusion to be debatable or wrong, and the court will not issue a certificate of appealability for this ground.

1    Ground 8 is a claim of cumulative error. Petitioner raised this issue on direct appeal, and
2 ground 8, like grounds 1 through 7, is a copy of petitioner's opening brief on direct appeal.
3 Consequently, ground 8 does not appear to encompass the claim of ineffective assistance of counsel
4 in ground 9(1).[4] The Nevada Supreme Court dismissed this issue summarily on the merits. Given
5 that the Nevada Supreme Court found that all of petitioner's substantive claims on direct appeal are
6 without merit, it reasonably could have concluded that the cumulative-error claim also is without
7 merit. See Harrington, 131 S. Ct. at 784; 28 U.S.C. § 2254(d)(1). Ground 8 is without merit.
8 Reasonable jurists would not find this conclusion to be debatable or wrong, and the court will not
9 issue a certificate of appealability for this ground.

10    Ground 9(1) is a claim that petitioner's appellate counsel provided ineffective assistance.
11 "[T]he right to counsel is the right to the effective assistance of counsel." McMann v. Richardson,
12 397 U.S. 759, 771 & n.14 (1970). A petitioner claiming ineffective assistance of counsel must
13 demonstrate (1) that the defense attorney's representation "fell below an objective standard of
14 reasonableness," Strickland v. Washington, 466 U.S. 668, 688 (1984), and (2) that the attorney's
15 deficient performance prejudiced the defendant such that "there is a reasonable probability that, but
16 for counsel's unprofessional errors, the result of the proceeding would have been different," id. at
17 694. "[T]here is no reason for a court deciding an ineffective assistance claim to approach the
18 inquiry in the same order or even to address both components of the inquiry if the defendant makes
19 an insufficient showing on one." Id. at 697.

20    Petitioner argues in ground 9(1) that appellate counsel should have raised on appeal the issue
21 that the jury was all white. Juries must be drawn from a source that is fairly representative of the
22 community, but the Constitution does not require that any jury mirrors the community or that a
23 defendant has a right to a jury of a particular composition. Taylor v. Louisiana, 419 U.S. 522, 538
24 (1975).

> In order to establish a prima facie violation of the fair-cross-section requirement, the
> defendant must show (1) that the group alleged to be excluded is a "distinctive" group in the

---

[4] Even if ground 8 did encompass ground 9(1), the result would be the same, because ground 9(1) is without merit.

community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.

Duren v. Missouri, 439 U.S. 357, 364 (1979). In his state habeas corpus petition, petitioner raised the same claim, and he also claimed that trial counsel provided ineffective assistance for not objecting to the racial composition of the jury. The Nevada Supreme Court held:

> Second, appellant claimed that trial counsel was ineffective for failing to object to the jury pool as not representative of a fair cross-section of the community which resulted in his trial before an allegedly all-white petit jury. Appellant claimed that there was underrepresentation based on race and economic status. Appellant failed to demonstrate that this issue had a reasonable probability of success on appeal as appellant failed to demonstrate a prima facie violation of the fair cross section requirement. See Duren v. Missouri, 439 U.S. 357, 364 (1979); Evans v. State, 112 Nev. 1172, 1186-87, 926 P.2d 265, 275 (1996). Notably, appellant failed to demonstrate that any underrepresentation was due to the systematic exclusion in the jury selection process. See id. Further, we note that variations in percentages of particular communities may be constitutionally permissible in a jury venire. See Williams v. State, 121 Nev. 934, 941, 125 P.3d 627, 632 (2005). Therefore we conclude that the district court did not err in denying this claim.

Ex. GG, pp. 3-4 (#6). On the question whether appellate counsel should have raised on appeal the issue of jury composition, the Nevada Supreme Court held, "For the reasons discussed earlier, appellant failed to demonstrate that this issue had a reasonable probability of success on appeal." Id., p. 5. In his state habeas corpus petition and supporting memorandum, petitioner did not demonstrate any systematic exclusion in the process of selecting potential jurors. See Ex. T, U (#6). Consequently, the Nevada Supreme Court reasonably applied Duren, which requires a demonstration of systematic exclusion. The Nevada Supreme Court also reasonably applied Strickland, because without a demonstration of systematic exclusion appellate counsel could not have succeeded with this issue on direct appeal. See 28 U.S.C. § 2254(d)(1). Ground 9(1) is without merit. Reasonable jurists would not find this court's conclusion to be debatable or wrong, and the court will not issue a certificate of appealability for this ground.

IT IS THEREFORE ORDERED that the petition for a writ of habeas corpus (#1) is **DENIED**. The clerk of the court shall enter judgment accordingly.

///

///

1 | IT IS FURTHER ORDERED that a certificate of appealability is **GRANTED** on the issue of
2 | whether petitioner's right to a fair trial, guaranteed by the Sixth Amendment, was violated when the
3 | trial court allowed petitioner's former counsel to reveal confidential information to the trial court
4 | and when the trial court allowed petitioner's former counsel to testify against petitioner at trial.
5 | DATED:   January 3, 2012.

_____
ROGER L. HUNT
United States District Judge